**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| **ITSERVE ALLIANCE, INC., et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Case No. 20-cv-00201 (APM)** |
| | ) | |
| **KENNETH T. CUCCINELLI II, Senior Official** | ) | |
| **Performing the Duties of the Director, U.S.** | ) | |
| **Citizenship and Immigration Services,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.      INTRODUCTION**

Plaintiffs in this putative class action are ITServe Alliance, Inc., a trade organization, and various of its member companies ("Plaintiffs").  They brought suit under the Administrative Procedure Act ("APA"), asserting that since January 2014, the U.S. Citizenship and Immigration Services ("USCIS") has illegally charged sponsoring employers an excessive fee for filing change-of-status applications for H1-B visa beneficiaries who are already in the United States.  They contend that USCIS has collected nearly $350 million in excessive fees.  Plaintiffs demand three forms of relief:  (1) an injunction prohibiting USCIS from charging the unlawful fee (First Cause of Action); (2) a refund of all excess fees collected (Second Cause of Action); and (3) a set aside of denied applications that USCIS rejected based on the failure to pay the illegal fee (Third Cause of Action).

Citing the unavailability of money damages under the APA and the availability of such relief under the Tucker Act, Defendant moves to dismiss for lack of subject matter jurisdiction, or

in the alternative, to transfer the case to the U.S. Court of Federal Claims.  For the reasons that follow, Defendant's Motion to Dismiss is denied in part and held in abeyance in part.  The court lacks jurisdiction over the First and Second Causes of Action that, respectively, seek declaratory relief and repayment of excess fees, but has jurisdiction over the Third Cause of Action, which asks the court to set aside denied applications for non-payment of the illegal fee.  The court, however, will defer dismissing those claims over which it lacks jurisdiction to afford Plaintiffs the opportunity to request transfer of this matter, in its entirety, to the U.S. Court of Federal Claims.

## II.     BACKGROUND

### A.     Factual Background

Under the Immigration and Nationality Act ("INA"), domestic employers can sponsor a foreign national as an H-1B nonimmigrant temporary worker.  *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b).  A person so classified is permitted to "perform services . . . in a specialty occupation."  *Id.*  A "specialty occupation" is one that requires "(A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States."  8 U.S.C. § 1184(i)(1).  Some prospective H1-B workers are already lawfully within the United States.  *See* 8 U.S.C. § 1258(a)  (governing changes to nonimmigrant classifications).  This circumstance arises, for example, when the foreign national is here under another nonimmigrant status, such as a student visa.  An employer can ask USCIS to change the person to an H-1B status so that she can work.

To sponsor a foreign national for H1-B status, the employer must file an application with USCIS.  *See* 8 U.S.C. § 1184(c).  When employers file such an application, they are required to include a filing fee.  *See* 8 C.F.R. § 103.2(a)(1).  On August 13, 2010, Congress passed "[a]n [a]ct

[m]aking emergency supplemental appropriations for border security . . . and for other purposes," which required employers to pay an additional fee for H-1B visa petitions if they have 50 or more employees in the United States, 50 percent or more of whom are classified under H-1B nonimmigrant visa status.  Pub. L. No. 111-230; Pls.' Second Am. Compl., ECF No. 9 [hereinafter Second Am. Compl.], ¶¶ 32–40.  The court refers to these as "50/50" companies.  The legislation increased by $2,000 "the filing fee and fraud prevention and detection fee required to be submitted with an application for admission as a[n] [H-1B] nonimmigrant."  Pub. L. No. 111-230 § 402(b). This new fee initially was set to expire on September 30, 2014, *see id.*, but Congress later extended the sunset date to September 30, 2015, *see* Pub. L. No. 111-347 § 302.  In 2016, Congress increased the fee for 50/50 companies to $4,000.  Pub. L. No. 114-113 § 411(b).  It also clarified that the higher fee applied to "an application for an extension of [H1-B] status."  *Id.*  Congress later continued the $4,000 fee through 2027.  Pub. L. No. 115-123 § 30203(b).

The crux of Plaintiffs' complaint is that, for years, USCIS has been unlawfully charging the $2,000 fee, and later the $4,000 fee, for applications to change the status of nonimmigrants already in the United States to the H1-B classification.  Again, think of the foreign national who is in the United States on a student visa who a company seeks to hire.  The prospective employment will require a change to H1-B status.  The increased fee should not apply to such applications, Plaintiffs say, because the text of the 2010 legislation, which imposed the fee increase, applies only to "an application *for admission* as a[n] [H-1B] nonimmigrant." Pub. L. No. 111-230 § 402(b) (emphasis added).  Plaintiffs contend that a change-in-status petition is different than an application for admission, Second Am. Compl., ¶¶ 41, 50, and that based on the plain statutory text, Congress intended for the increased fee to apply to the latter but not the former, *see* Pls.' Mem. of P. & A. in Opp'n to Defs.' Mot. to Dismiss or Transfer Venue, ECF No. 18, [hereinafter

Pls.' Opp'n], at 5.  But yet, they allege, USCIS's website, forms, and instructions impose the fee on all new H-1B visa applications, regardless of whether the sponsored employee is seeking admission into the United States or a change of status while already living here.  Second Am. Compl. ¶¶ 45–54.  Plaintiffs claim that this practice is unlawful and in excess of USCIS's statutory authority.

### B.      Procedural Background

Plaintiff ITServe Alliance Inc. is a nonprofit that represents information technology companies across the United States, including the twelve named Plaintiff companies in this lawsuit.  *Id.* ¶¶ 1–13.  Each of these corporate Plaintiffs qualifies as a 50/50 company, and each has either paid the increased fee in connection with a change-of-status H-1B petition or has had its petition denied for nonpayment of the fee.  *Id.* ¶¶ 26, 29, 139–140.  Plaintiffs allege that over the last six years, the agency has unlawfully charged and collected approximately $350 million dollars in illegal fees submitted with change-of-status H-1B applications.  *Id.* ¶ 63.

Plaintiffs first filed this action on January 26, 2020, against Defendant Kenneth T. Cuccinelli II, in his official capacity as Senior Official Performing Duties of the Director of USCIS.  *See* Compl., ECF No. 1.  On March 10, 2020, Plaintiffs filed their First Amended Complaint, *see* First Am. Compl., ECF No. 7, and Defendant moved to dismiss for lack of subject matter jurisdiction, *see* Def.'s Mot. to Dismiss, ECF No. 8.  On April 10, 2020, Plaintiffs filed their Second Amended Complaint, thereby mooting Defendant's Motion to Dismiss.  *See* Second Am. Compl.; Minute Order, Apr. 13, 2020.

The Second Amended Complaint asserts three claims, all under the APA.  Each claim asks for a different form of relief premised on the same theory of liability—namely, that USCIS acted arbitrarily and capriciously and contrary to law by charging a higher fee for change-of-status H1-

B petitions (as opposed to H1-B applications for admission).  In their first cause of action, Plaintiffs

ask the court to declare that practice unlawful and enjoin its continuation.  *Id.* ¶¶ 120–126.  In the

second cause of action, Plaintiffs demand that USCIS repay the nearly $350 million in excessive

fees it has collected over the last six years.  *Id.* ¶¶ 127–133.  And, finally, in their third cause of

action, Plaintiffs request that the court set aside those petitions denied by USCIS for nonpayment

of the illegal fee.  *Id.* ¶¶ 134–142.  Corresponding to each cause of action, Plaintiffs allege three

putative classes, which they term an "Injunction Class," a "Refund Class," and a "Denial Class."

*Id.* ¶¶ 72, 89, 108.

Simultaneously with their Second Amended Complaint, Plaintiffs moved for a preliminary

injunction, for partial summary judgment, and to certify a class.  *See* Pls.' Mot. for Prelim. Inj.,

ECF No. 10; Pls.' Mot. for Partial Summ. J., ECF No. 11; Pls.' Mot. to Certify Class, ECF No. 12.

On April 17, 2020, the court denied Plaintiffs' Motion for a Preliminary Injunction after finding

that Plaintiffs had failed to establish irreparable harm, *see* Order, ECF No. 16, but reserved

decision on the summary judgment and class certification motions pending a ruling on Defendant's

renewed motion to dismiss, *see* Minute Order, Apr. 17, 2020.

Defendant's renewed motion is now before the court.  *See* Def.'s Mot. to Dismiss,

ECF No. 17.  Defendant maintains that the court lacks subject matter jurisdiction over this action.

Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss, ECF No. 17-1 [hereinafter Def.'s

Mem.], at 9, 17–19.  Defendant argues that Plaintiffs' claims, however styled, are effectively for

money damages and, because the APA does not waive the federal government's sovereign

immunity for money damages, this court does not have jurisdiction to hear Plaintiffs' case.  Def.'s

Mem. at 9; Def.'s Reply Br., ECF No. 19 [hereinafter Def.'s Reply], at 1–2.  In addition, Defendant

asserts that an APA cause of action is only available where there is "no other adequate remedy in

a court," 5 U.S.C. § 704, and here, the U.S. Court of Federal Claims ("Court of Federal Claims")

under the Tucker Act can effectively provide all the relief—money damages and equitable and

declaratory relief—that Plaintiffs seek, Def.'s Mem. at 16–17; Def.'s Reply at 9–13.  The court

now turns to these arguments.

## III.   LEGAL STANDARD

Because "[f]ederal courts are courts of limited jurisdiction," it is presumed "that a cause

lies outside of this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375,

377 (1994).  A plaintiff bears the burden of demonstrating that the court has jurisdiction over his

claim.  *Id.*  "If a court lacks subject matter jurisdiction to entertain a claim, it must dismiss that

claim." *Cofield v. United States*, 64 F. Supp. 3d 206, 211 (D.D.C. 2014) (citing Fed. R. Civ. P.

12(b)(1), 12(h)(3)).  When reviewing a motion to dismiss under Rule 12(b)(1), courts "assume the

truth of all material factual allegations in the complaint and construe the complaint liberally,

granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l*

*Ins. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up).

## IV.   DISCUSSION

To invoke the jurisdiction of a federal court in a suit against a federal agency, a litigant

must show that the United States has waived its sovereign immunity.  *See United States v. White*

*Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) ("Jurisdiction over any suit against the

Government requires a clear statement from the United States waiving sovereign immunity . . .

together with a claim falling within the terms of the waiver.").  Two statutes that waive the federal

government's sovereign immunity are pertinent here.  One is the Tucker Act, which vests the Court

of Federal Claims with "exclusive jurisdiction over[] [certain] actions for money damages of more

than $10,000." *Suburban Mortg. Assocs. v. HUD*, 480 F.3d 1116, 1121 (Fed. Cir. 2007) (citing

28 U.S.C. §1491(a)(1)); *see also* 28 U.S.C. § 1346(a)(2).   The other is the APA, which confers authority on district courts to hear cases challenging certain executive agency actions. *See* 5 U.S.C. §§ 701–706.  "Congress reconciled these two general statutory waivers by providing [ ] three specific limitations" in the APA, *Suburban Mortg. Assocs.*, 480 F.3d at 1124, two of which are relevant here:   (1) an APA claim can only be for relief "other than money damages," 5 U.S.C. § 702, and (2) the APA only applies if there is "no other adequate remedy in a court," *id.* § 704.[1]  Defendant argues that both limitations divest the court of jurisdiction over Plaintiffs' claims.  The court addresses each ground in turn.

> A.      **Money Damages**

The question presented here is whether Plaintiffs seek "relief other than money damages." 5 U.S.C. § 702.  In one sense, the answer might seem obvious:  Plaintiffs plainly seek the return of excess fees and therefore ask for "money" as "damages."   But not every award of money qualifies as "money damages" for purposes of the APA.  The Supreme Court made that clear in *Bowen v. Massachusetts*, where it stated "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" 487 U.S. 879, 894 (1988).  If what Plaintiffs really seek is "specific relief" for money owed, *Bowen* instructs, the federal district court has jurisdiction over the claim under the APA.  *Id.* at 910.

The Court in *Bowen* adopted the reasoning originally set forth by the D.C. Circuit in *Maryland Department of Human Resources v. Department of Health and Human Services*, 763 F.2d 1441 (D.C. Cir. 1985).  *See Am.'s Cmty. Bankers v. FDIC*, 200 F.3d 822, 829 (D.C. Cir. 2000) (recognizing that *Bowen* adopted the D.C. Circuit's reasoning in *Maryland Department of Human Resources*).   There, the D.C. Circuit distinguished between money damages (or

---

[1] The third exception, not in dispute here, is that a suit cannot be brought under the APA "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  5 U.S.C. § 702.

compensatory relief) on the one hand, which it described as "given to the plaintiff to *substitute* for a suffered loss," and "specific remedies" on the other, which it said represent an "attempt to give the plaintiff the very thing to which he was entitled." *Md. Dep't of Hum. Res.*, 763 F.2d at 1446 (cleaned up).  As this case shows, the line between the two is not always clear.  Since *Bowen*, a "sort of cottage industry among lawyers attempting to craft suits, ultimately seeking money from the Government, as suits for declaratory or injunctive relief," has formed.  *Suburban Mortg. Assocs.*, 480 F.3d at 1124.  In response, the appellate courts, including the D.C. Circuit, have made clear that "dressing up a claim for money as one for equitable relief will not remove the claim from Tucker Act jurisdiction and make it an APA case."  *Id.* (providing cases); *see also Kidwell v. Dep't of the Army*, 56 F.3d 279, 284 (D.C. Cir. 1995) ("[J]urisdiction under the Tucker Act cannot be avoided by . . . disguising a money claim as a claim requesting a form of equitable relief." (cleaned up)); *A.E. Finley & Assocs. v. United States*, 898 F.2d 1165, 1167 (6th Cir. 1990) ("[O]ne cannot circumvent exclusive jurisdiction in the Claims Court by suing simply for declaratory or injunctive relief in a case where such relief would be the equivalent of a judgment for money damages."); *Eagle–Picher Indus., Inc. v. United States*, 901 F.2d 1530, 1532 (10th Cir. 1990) ("A party may not circumvent the Claims Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States." (cleaned up)).

Defendant argues that Plaintiffs have done just that—dressed up what is essentially a claim for money damages as one for specific relief.  Def.'s Mem. at 12–13.  Plaintiffs have an illegal "exaction claim," Defendant says, because Plaintiffs "paid fees that they contend USCIS has no authority to assess, and now they want their money back."  Def.'s Reply at 3; *see Boeing Co. v. United States*, 968 F.3d 1371, 1383 (Fed. Cir. 2020) (describing an "illegal exaction" claim as one

in which "the plaintiff has paid money over to the Government . . . and seeks return of all or part of that sum that was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation" (internal quotation marks and citation omitted)).  Such claims are properly before the Court of Federal Claims.  *See Boeing Co.*, 969 F.3d at 1384; *see also Consol. Edison Co. v. Dep't of Energy*, 247 F.3d 1378, 1384 (Fed Cir. 2001) (observing that the Court of Federal Claims "has long possessed jurisdiction to consider [ ] claims [brought] . . . under the 'illegal exaction' doctrine").  Plaintiffs, on the other hand, say the remedy they seek is "specific, equitable relief in the form of *restitution*."  Pls.' Opp'n at 12 (emphasis added).  "[T]he return of funds held by USCIS," Plaintiffs argue, "is the type of specific relief that the Supreme Court held was not 'money damages' within the meaning of the APA [in its decision in *Bowen*]." *Id.*  Relying on *Bowen*, Plaintiffs claim that "when an agency obtains monies to which it is not entitled because of an error in interpreting or applying a statute, the party requesting the return of the improper payments is not seeking money damages but is pursuing an equitable form of relief." *Id.*

Plaintiffs' reliance on *Bowen* is misplaced.  In *Bowen*, the state of Massachusetts brought suit against the Secretary of the Department of Health and Human Services to enforce Section 1396b(a) of the Medicaid Act, which required the Secretary to pay states for certain Medicaid expenses.  *Bowen*, 487 U.S. at 900.  The Court concluded that the suit was not "seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it [wa]s a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money." *Id.*  Because the plaintiffs were statutorily entitled to money, the Court held, the suit was one for specific relief. *Id.* at 910.  Here, by contrast, Plaintiffs do not seek to enforce a "statutory mandate, which happens to be one for the payment of money."  They

9

point to no statute that mandates the government return illegally assessed fees.  Instead, they ask for the return of money that, they claim, was illegally assessed by USCIS.  Theirs is thus a suit that advances a traditional claim for "money damages"—an award "given to [a] plaintiff as substitute for a suffered loss."  *Md. Dep't of Hum. Res.*, 763 F.2d at 1446.

The D.C. Circuit's decision in *America's Community Bankers v. FDIC*, another case on which Plaintiffs rely, confirms that what Plaintiffs seek here is "money damages," not "specific relief."  200 F.3d at 822.  In that case, the plaintiff argued that a "statutory scheme" "required" a government agency to return funds previously assessed to the plaintiff.  *Id.* at 829–30 (stating that the plaintiff "maintains that the statutory scheme . . . *required* the [agency] to provide for a[n] [ ] assessment refund in the revised assessment schedules promulgated in December 1996" (emphasis added)).  The government argued that the sought-after funds were money damages and therefore the district court lacked jurisdiction over the plaintiff's action to obtain the funds.  *Id*.  The district court agreed, but the D.C. Circuit reversed.  Relying on *Bowen*, the D.C. Circuit found that the plaintiff was seeking specific relief, not monetary damages, because under the plaintiff's reading, the statute itself promised a refund.  *Id.* at 829.  The court held that "[w]here a plaintiff seeks an award of funds to which it claims entitlement under a statute, the plaintiff seeks specific relief, not damages."  *Id.*  The "entitlement" under a "statutory scheme" that was present in *America's Community Bankers* is absent here.  As discussed, Plaintiffs do not claim entitlement to the return of excess fees under a statute.  They ask instead to be made whole as a result of an alleged assessment of fees by USCIS that went beyond what Congress authorized.  Thus, they seek "compensation for economic losses suffered by the government's alleged wrongdoing."  *Id.* at 830.  That is a classic form of money damages.

Plaintiffs point to language in *America's Community Bankers* that, to be fair, could be read to support their position.  *See* Pls.' Opp'n at 13–14.  In finding subject matter jurisdiction appropriate, the court wrote that the "[plaintiff] wants [the agency] to return that which rightfully belonged to [the plaintiff's] member institutions in the first place . . . .  If [the plaintiff] is correct in its statutory interpretation, then [the agency] improperly collected money from [the plaintiff's] members, and they are entitled under the statutory scheme to get their money back."  *Am.'s Cmty. Bankers*, 200 F.3d at 830.  It is true that Plaintiffs here assert, as did the plaintiff in *America's Community Bankers*, that a federal agency improperly collected money and that they seek what "rightfully belonged to [them] in the first place."  *Id*.  But the key difference is that the plaintiff in *America's Community Bankers* asserted that the specific "statutory scheme" "entitled" it to the return of funds.  200 F.3d at 829.  The APA, the only statute on which Plaintiffs rely, provides no comparable "entitlement."[2]

Plaintiffs cast the relief they seek as restitution—an equitable remedy—but that label does not control.  Restitution "in the judicial context commonly consists of money damages," and is not always an equitable action for specific relief.  *Bowen*, 487 U.S. at 917 n.2 (Scalia, J., dissenting).  Nor does Plaintiffs' contention that their claims are amenable to the "specific equitable relief of a constructive trust" change the result.  Pls.' Opp'n at 15.  At bottom, Plaintiffs' claim is one for money damages, not equitable relief.  The Supreme Court's recent decision in *Liu v. SEC*, 140 S. Ct. 1936 (2020), also does not help Plaintiffs.  *Liu* involved a discrete legal issue (available remedies) under a specific statute not at issue in this case (15 U.S.C. § 78u(d)(5)), and is thus

---

[2] Plaintiffs also cite *Steele v. United States*, 200 F. Supp. 3d 217 (D.D.C. 2016), in which another court in this District, relying on *America's Community Bankers*, found it had subject matter jurisdiction over the plaintiffs' request for monetary relief stemming from an allegedly charged excessive fee by the Internal Revenue Service. *Id.* at 219.  To the extent that the court in *Steele* interpreted *America's Community Bankers* as extending jurisdiction under the APA over monetary relief that is not incidental to a statutory obligation, this court respectfully disagrees with that analysis.

11

inapposite.   Nothing in *Liu* changes the nature of the remedy sought in this case, which is compensatory relief.

The three out-of-circuit opinions on which Plaintiffs rely also are unavailing.  Pls. Opp'n at 19–20, 24.  In *Aetna Casualty & Surety Co. v. United States*, the Second Circuit explained that the dispositive difference between equitable relief and money damages is that the latter "seek[s] to compensate for governmental failure to perform a legal duty" while "injunctive relief requir[es] that the duty be performed."  71 F.3d 475, 479 (2d Cir. 1995).  Once more, Plaintiffs are not trying to force the government to pay them fees owed under a statute or "some other rule of law"; they want compensation for the government's failure to charge them the appropriate fee for an H1-B application.  *See id.*  The same applies for *Linea Area Nacional de Chile S.A. v. Meissner*, 65 F.3d 1034 (2d Cir. 1995).  There, an airline sued the government to get reimbursed for the costs of detaining asylum-seekers pending the government's review of their claims.  *Id.* at 1036.  The court found that the INA, as amended, shifted those costs from the airlines to the Immigration and Naturalization Service.  *Id.* at 1039–42.  Because the airline had "a statutory entitlement to reimbursement for its improperly incurred expenses," the Second Circuit held plaintiffs sought an equitable remedy.  *Id.* at 1044.  Plaintiffs here have no such statutory entitlement.  And in *Zellous v. Broadhead Associates*, the plaintiffs sued to compel the government to adhere to its statutory obligation to maximize certain tenants' rents.  906 F.2d 94, 98 (3d Cir. 1990).  The court found the claim to be injunctive, not one for money damages, even though the statute did not mandate direct payments to tenants but instead reduced their rental obligations through subsidies to property owners.  *Id.*  The key difference is, again, that Plaintiffs in this case do not claim that Defendant was legally obliged to pay them money, directly or otherwise.  Instead, they claim that USCIS

charged them a higher fee than statutorily authorized for change-of-status H-1B visa applications.

The INA says nothing about a compelled refund if USCIS improperly charges an excessive fee.

Accordingly, because Plaintiffs' demand for the return of the excessive fees collected by

USCIS is a demand for money damages, the court lacks jurisdiction as to that claim under the

APA.

### B.     Adequate Remedy

The analysis contained in the previous section does not apply to the entirety of Plaintiffs'

action.  Recall, Plaintiffs advance three causes of action, each seeking a different form of relief:

(1) a declaration that USCIS's practice of charging a higher fee for change-of-status H1-B

applications is unlawful, and such practice must be enjoined; (2) a refund of the unlawfully charged

fees; and (3) a reversal of applications denied for failure to pay the illegal fee.  *See* Second Am.

Compl. ¶¶ 120–142.   The money damages/specific relief inquiry discussed above applies only to

the second of these claims, but not the first and third claims, which plainly seek equitable relief.

The question nevertheless remains whether the APA's second relevant limitation—whether there

is another adequate remedy at law—forecloses this court's jurisdiction over those claims.  It is to

that question the court now turns.

### 1.     *Declaratory and Injunctive Relief*

According to Plaintiffs, there is "no other adequate remedy in a court," 5 U.S.C. § 704, for

the "equitable and prospective relief" they seek through "an injunction prohibiting USCIS from

collecting unlawful fees in the future," Pls.' Opp'n at 21.  Specifically, they contend that the Court

of Federal Claims does not have the power to grant a "declaration that USCIS's application of the

statute is incorrect," nor to prevent "the agency from applying its incorrect interpretation in future

petitions for change of status." *Id.* at 22.  But Plaintiffs' understanding of the effectiveness of the remedy available to them in the Court of Federal Claims is too narrow.

The Federal Circuit has held that a claim for money damages under the Tucker Act is "presumptively an 'adequate remedy' for § 704 purposes." *Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1349 (Fed. Cir. 2005); *see also Consol. Edison Co.*, 247 F.3d at 1382; *Martinez v. United States*, 333 F.3d 1295, 1320 (Fed. Cir. 2003) (en banc).  That is because an award of monetary relief under the Tucker Act is ordinarily predicated on some finding of a legal error or wrongdoing by the agency.  Once such a finding is made, the agency action challenged can no longer endure without the risk of additional penalties, and accordingly, it generally stops.  No injunctive relief needed.

In *Kanemoto v. Reno*, for example, the Federal Circuit examined whether the Tucker Act provided an adequate remedy for a plaintiff seeking a declaration, injunction, and restitution owing to the government's alleged improper reading of the Civil Liberties Act of 1988.  41 F.3d 641, 643, 646 (Fed. Cir. 1994).  The Civil Liberties Act provided restitution of $20,000 to "each eligible individual" of Japanese ancestry who was interned during World War II.  *Id.* at 643.  The agency responsible for implementing the Civil Liberties Act—the Office of Redress Administration ("ORA")—denied the plaintiff's claim on the basis that she had relocated to Japan during the war and therefore was ineligible for the payment.  *Id.* (citing 50 U.S.C. App. § 1989b-7(2)). "Kanemoto filed suit in the district court challenging the agency's determination and seeking the statutory amount of restitution."  *Id.*  The district court held that it had jurisdiction to hear the suit because Kanemoto did not seek "monetary damages," but rather "reparation payments" incidental to her claim for equitable relief, and the action was therefore subject to the APA's waiver of sovereign immunity for nonmonetary damage claims.  *Id.*

14

On interlocutory appeal, the Federal Circuit reversed.  It concluded that "jurisdiction for th[e] action [was] not available under the APA" because the Tucker Act was capable of providing Kanemoto with an adequate remedy.  *Id.* at 646.  The court observed that, though Kanemoto had "framed her complaint to seek a declaration of the meaning of the statutory provision and an injunction to compel the Attorney General to so interpret the statute, the ultimate relief [she sought] in all counts of the complaint [was] the payment to her of the $20,000" in restitution.  *Id.* "Moreover," the court noted, "[a] decision by the Court of Federal Claims would 'declare' the proper interpretation of the statute."  *Id.*  Although "the interpretation in the opinion would not technically preclude the ORA from taking a conflicting position in a different case," the court elaborated, "as a practical matter[,] the opinion would stand as persuasive precedent in future cases."  *Id.*  "Finally," the court explained, "the Court of Federal Claims' judgment would 'compel' the Attorney General to make the redress payments sought by Kanemoto."  *Id.*  Thus,  because the Court of Federal Claims, "under its Tucker Act jurisdiction[, could] interpret the statute and render a judgment against the United States that [would] provide Kanemoto with the entire relief she sought in the first place"—the payment of the restitution owed to her under the statute—the court found that relief to be "adequate."  *Id.* at 645–46; *see also Desert Sunlight 250, LLC v. Lew*, 169 F. Supp. 3d 91, 98 (D.D.C. 2016) ("Plaintiffs could achieve everything they seek by persuading the Court of Federal Claims that they are correct on the merits, thereby securing a favorable precedent through which to extract future grant payments.").

The same logic applies here.  Like Kanemoto, Plaintiffs have fashioned their "complaint to seek a declaration of the meaning of the statutory provision and an injunction to compel [USCIS] to so interpret it."  *Kanemoto*, 41 F.3d at 646.  But the gravamen of their Complaint is their claim for the return of excess fees on the order of $350 million.  To prevail on that claim at the Court of

Federal Claims, the court would first have to determine that the agency's interpretation of the underlying statutory fee scheme was wrong. That determination would "as effectively establish [Plaintiffs'] rights as would a declaratory judgment in district court." *Bowen*, 487 U.S. at 926 (Scalia, J., dissenting). What's more, if Plaintiffs prevail on their monetary claim, and the government is ordered to hand over $350 million, one can rest assured the agency will stop assessing the excess fee about which Plaintiffs complain. Plaintiffs therefore have "an adequate remedy in a court," and that court is the Court of Federal Claims, not this one. Accordingly, the court lacks jurisdiction over Plaintiffs' first claim seeking declaratory and injunctive relief.

### 2.     Invalidation of Denied Applications

Plaintiffs seek a second form of injunctive relief in their third cause of action: a "set aside" of all change-of-status applications denied for the failure to pay the illegal fee. Second Am. Compl. ¶¶ 129, 137. Defendant ignores this additional injunctive relief entirely, notwithstanding Plaintiffs' response that the Court of Federal Claims lacks the authority to "set aside USCIS's improper rejection of Plaintiffs' petitions based on their not paying the improperly imposed fee." Pls.' Opp'n at 22. Plaintiffs are surely correct that the Court of Federal Claims lacks the power to order USCIS to set aside the applications it denied for failure to pay the fee. *See Bowen*, 487 U.S. at 905 ("The [Court of Federal Claims] does not have the general equitable powers of a district court."). So, as to count three, "jurisdiction under the APA would *appear to* lie" with this court. *Kidwell*, 56 F.3d at 284 (emphasis added); *see also York Assocs., Inc. v. Sec. of HUD*, 815 F. Supp. 16, 19 (D.D.C. 1993) ("[S]ubject matter jurisdiction . . . must be satisfied for each claim.").

Yet, the question remains whether the court can actually exercise jurisdiction as to that claim. The D.C. Circuit explained in *Kidwell* that "a district court with otherwise appropriate jurisdiction may hear [a] claim" only if it is "something more than an artfully drafted effort to

16

circumvent the jurisdiction of the Court of Federal Claims." 56 F.3d at 284. The court must inquire whether the equitable relief sought has any value "independent of any future potential for monetary relief." *Id.* Here, the additional equitable relief sought by Plaintiffs—the setting aside of denied applications—does have value separate and apart from the return of fees sought. Putative class members whose sponsored change-of-status applications were denied lost out on the opportunity to employ a person who could have contributed to their companies. These are potential employees who, by definition, have specialized skill or knowledge, so their value may be significant. Whether any such person could still benefit from a revived H1-B application for a particular employer is unclear, however. After all, a person whose change-of-status application was refused years ago because his potential employer refused to pay the full application fee might have found another employer who would pay the fee and have since received H1-B status. So, it is unclear whether there is a class of employers who could benefit from the requested equitable relief. But, for present purposes, on a motion to dismiss, the court will assume that such employers do exist, and finds that the court does have jurisdiction under the APA to grant the equitable relief sought in count three.

## C.     Transfer

The court thus faces an unusual circumstance: it lacks jurisdiction over Plaintiffs' first two claims, but not the third. The first two claims belong before the Court of Claims, but the third does not. The court cannot, however, transfer individual claims over which it lacks jurisdiction. *See Hill v. U.S. Air Force*, 795 F.2d 1067, 1070 (D.C. Cir. 1986). It must transfer the entire "action" or not at all. *See id.* (citing 28 U.S.C. § 1631); *see also Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 80 (D.C. Cir. 1985) ("[W]here a court finds that it lacks jurisdiction, it must transfer *such action* to the proper court." (emphasis added)).

Faced with this predicament, the court will defer ruling on Defendant's Motion to Dismiss in its entirety pending further instruction from Plaintiffs as to the alternative relief sought by Defendant—transferring the action to the Court of Federal Claims.

## V.   CONCLUSION AND ORDER

For the reasons stated, Defendant's Motion to Dismiss, ECF No. 17, is denied in part and held in abeyance in part.  The parties shall appear for a telephonic status hearing on November 30, 2020, at 10:00 a.m.

Dated:  November 17, 2020

Amit P. Mehta
United States District Court Judge